IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RODNEY HENRY,** | |
| **Plaintiff,** | **Civil Action No. _____** |
| v. | **Jury Trial Demanded** |
| **NEW ORLEANS LOUISIANA SAINTS, L.L.C.** | |
| **Defendant.** | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Rodney Henry brings this action against Defendant New Orleans Louisiana Saints, L.L.C., and respectfully alleges as follows:

### INTRODUCTION

1.  Plaintiff Rodney Henry ("Mr. Henry" or "Plaintiff") brings this lawsuit pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Louisiana Wage Payment Act, La. R.S. § 23:631, *et seq.* ("the Wage Payment Act"), and Louisiana state law for, *inter alia*, unpaid wages, including overtime compensation, liquidated damages, penalty wages, and attorney's fees and costs.

### THE PARTIES

2.  Mr. Henry is an individual residing in Jefferson Parish, Louisiana. Mr. Henry formerly was employed with Defendant as the Personal Assistant to Mr. Tom Benson until his employment was abruptly terminated on or around June 24, 2015.

3.  New Orleans Louisiana Saints, L.L.C. ("the Saints") is a foreign limited liability corporation and may be served through its registered agent for service of process: **Mr. Dennis P.**

1

**Lauscha, 5800 Airline Drive, Metairie, LA 70003.** The Saints are an "employer" within the meaning of the FLSA and the Wage Payment Act.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. Further, this Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

5. Venue is proper pursuant to 28 U.S.C. § 1391, as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

6. At all times material hereto, the Saints were an "enterprise engaged in commerce" within the meaning of the FLSA and had more than $500,000 in annual gross revenues. The Saints are a professional football team and its officers and employees routinely travel across state lines.

7. Mr. Henry began working for Defendant as Mr. Benson's Personal Assistant approximately twenty-five (25) years ago.[1] During all times relevant to this lawsuit, Mr. Henry was paid a salary and a bonus, and was not paid overtime for hours worked over forty (40) in a workweek. At the time of his termination, Mr. Henry earned approximately $50,000 per year and also received other benefits, including health insurance and a 401(k) match.

8. During his employment with Defendant, Mr. Henry's daily and weekly activities were routine and his job duties required no specialized training, or any advanced degree. Mr. Henry's job duties did not require the exercise of discretion and independent judgment with

---

[1] Prior to working for Defendant as Mr. Benson's Personal Assistant, Mr. Henry worked for Mr. Benson in other capacities beginning in or around 1985.

respect to matters of significance. Further, Mr. Henry did not have any supervisory or management duties.

9. On a typical weekday, Mr. Henry picked up Mr. Benson from his home and then drove him to work. When Mr. Benson was able to drive himself to work, Mr. Henry met him at Defendant's facility at 8:00 a.m. in the morning. Upon arriving to the Saints' headquarters, Mr. Henry helped Mr. Benson get settled and brought him a glass of water and a Coke. Mr. Henry then performed whatever tasks or errands that Mr. Benson or his wife (Mrs. Gayle Benson) asked him to do.

10. Mr. Henry's duties on a typical weekday included the following: (i) going to the bank; (ii) picking up prescriptions for Mr. Benson from Walgreens and other drug stores; (iii) picking up and delivering inter-office mail from Mr. Benson to employees of the Saints, including Rita LeBlanc; (iv) delivering tickets on behalf of Mr. Benson; and (v) picking up and delivering communications from Mr. Benson to persons and businesses outside of the Saints' organization, including Mr. Benson's car dealerships. Mr. Henry worked from at least 8:00 a.m. to 6:00 p.m. on a typical weekday. During many workweeks, Mr. Henry was not allowed to take a lunch break or was required to work during lunch.

11. On a typical weekday, Mr. Henry often was required to perform other errands for Mr. and Mrs. Benson, including: (i) picking up dinner and delivering it to their home, (ii) going to the grocery store and picking up grocery items for Mr. and Mrs. Benson, (iii) transporting Mr. and Mrs. Benson to various appointments, (iv) transporting Mrs. Benson to lunches, shopping excursions and other events, and (iv) delivering packages to the Archbishop's home. During Mardi Gras season, Mrs. Benson regularly required Mr. Henry to wake up at 4:00 a.m. to stand in line (sometimes in inclement weather) to purchase King Cakes from Randazzo's Bakery

before they sold out, and then deliver them to: (i) the airport for shipping, (ii) various individuals around the City of New Orleans, and/or (iii) the Bensons' home, where he would have to leave them on the back porch.

12. Further, Mr. Henry frequently worked until 9:00 p.m. or 10:00 p.m. whenever Mr. Benson had an event to attend on a weekday, *i.e.*, driving Mr. Benson to the event and then taking him home.

13. When the Saints were in training camp at Greenbriar, Mr. Henry was required to wake up at 5:00 a.m. and pick up newspapers for Mr. Benson and then stay with him until 9:00 p.m., performing whatever tasks were assigned to him. During training camp at Greenbriar, Mr. Henry's typical workday was from 5:00 a.m. to 9:00 p.m. each day. Throughout training camp at Greenbriar, Mr. Henry assisted Mr. and Mrs. Benson with various tasks and activities, which they assigned to him throughout each day.

14. During football season, Mr. Henry worked long hours on game days. When there was a Saints' home game on Sunday, Mr. Henry typically worked from 9:00 a.m. until 6:30 or 7:00 p.m. (unless the Saints played a late game, in which case he worked even longer hours). Mr. Henry picked up Mr. Benson before the game and drove him to the Superdome, sat with Mr. Benson during the game and brought him any food and beverages that he requested. After the game, Mr. Henry drove Mr. Benson back to his home.

15. When the Saints had an away game, Mr. Henry performed the same or similar duties noted above in Paragraph 14. However, Mr. Henry was required to perform a host of additional duties when traveling to away games. For example, Mr. Henry (i) loaded, unloaded, and carried Mr. and Mrs. Benson's luggage; (ii) sat directly behind Mr. Benson while in transit and performed whatever tasks he was asked to do, such as bringing Mr. Benson food and

beverages; and (iii) escorted Mr. Benson to his hotel room and helped him get settled in his room. Trips for away games typically lasted two days, during which time Mr. Henry worked from 9:00 a.m. to 9:00 p.m. on the first travel day and from 8:00 a.m. until he returned back to New Orleans with Mr. Benson (and sometimes transported Mr. and Mrs. Benson home from the airport).

16. During basketball season, Mr. Henry was required to work additional hours during the workday transporting Mr. Benson to and from New Orleans Hornets/Pelicans' games and events. During this time period, Mr. Henry worked from 8:00 a.m. to at least 10:00 p.m. when the Hornets/Pelicans played home games.

17. During his employment, Mr. Henry also was frequently on-call and was required to be available to work and perform duties outside his regular or scheduled work hours.

18. Defendant knew or should have known that Mr. Henry was performing the duties of a non-exempt employee and was entitled to overtime compensation. Upon information and belief, Defendant was specifically aware that Mr. Henry was a non-exempt employee entitled to overtime, but nevertheless ignored its obligations and continuously refused to pay him for his overtime work.

19. Defendant willfully misclassified Mr. Henry as an exempt employee and did not pay him the overtime compensation he was owed.

20. Defendant's failure to properly pay overtime compensation was neither reasonable, nor was the decision not to pay overtime made in good faith.

21. Mr. Benson valued Mr. Henry's hard work and was greatly appreciative of his work efforts and loyalty to Mr. Benson and the Saints. Accordingly, Mr. Benson had an Employment Agreement prepared for Mr. Henry to ensure that he was taken care of.

22. On or around January 23, 2014, Mr. Benson and Mr. Henry executed the Employment Agreement. (*See* Exhibit A, Employment Agreement). In relevant part, Mr. Henry's Employment Agreement provides as follows:

> Tom Benson himself, personally reserves the right to terminate RODNEY without having to pay a two-year termination fee during his lifetime. This right of termination is not transferrable, and may not be exercised by personal representatives, agents, successors, guardians, or attorneys-in-fact under a power of attorney of Tom Benson.
>
> ************
>
> If anyone other than Tom Benson terminates RODNEY between the execution date of this Agreement and the date of the death of Benson, then the Club shall pay RODNEY an amount equal to two times RODNEY's previous year's gross salary.

23. Mr. Benson did not personally terminate Mr. Henry; rather another Saints employee, Pat McKinney, terminated Mr. Henry's employment. In fact, Mr. Benson was not present during the termination meeting and at no time did Mr. Benson communicate with Mr. Henry regarding his termination or the basis for it. Despite the close working relationship Mr. Henry once had with Mr. Benson, Mr. Henry was increasingly isolated from Mr. Benson and did not have regular communication with him during the last months of his employment.

24. After his employment was terminated, Mr. Henry made demand for the wages owed to him under the terms of his Employment Agreement. The Saints, however, have refused to pay Mr. Henry the wages owed under his Employment Agreement.

25. At the time of his termination, Mr. Henry was entitled to five (5) days of accrued vacation pay. Mr. Henry has made demand for the vacation pay owed to him, but the Saints have refused to pay.

26. Defendant's denial of legal wages to Mr. Henry is, and has been, willful and deliberate.

## **FIRST CAUSE OF ACTION**
(Violations of the FLSA)

27. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth.

28. The FLSA requires employers to pay all non-exempt employees overtime compensation of 1 ½ times their regular rate of pay for all hours worked over forty (40).

29. Defendant has violated the requirements of the FLSA by misclassifying Plaintiff as an exempt employee.

30. Defendant has deprived Plaintiff of lawful compensation by *inter alia,* failing to pay overtime compensation for hours worked over forty (40).

31. Defendant's conduct, as alleged, constitutes a willful violation of the FLSA.

32. As a result of Defendant's unlawful conduct, Plaintiff is entitled to damages equal to the amount of all uncompensated time, including overtime pay, and an award of liquidated damages in an amount equal to the amount of unpaid compensation owed under the FLSA.

33. Plaintiff also seeks reasonable attorney's fees and costs, as provided by the FLSA.

## **SECOND CAUSE OF ACTION**
(Breach of Contract)

34. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth.

35. Defendant entered into a contract with Mr. Henry as heretofore alleged.

36. Defendant breached this contract by failing to pay Plaintiff all wages and/or payments due under the terms of his contract.

37. Plaintiff is entitled to recover all wages and/or payments to which he is owed by contract, and all other damages resulting from Defendant's breach of contract.

## THIRD CAUSE OF ACTION
(Violation of the Wage Payment Act)

38. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth.

39. Despite repeated demands from Plaintiff and his counsel, Defendant has failed to pay him wages due under the terms of his employment within the time period prescribed by the Wage Payment Act.

40. Accordingly, Plaintiff is not only entitled to recover his unpaid wages, but also penalty wages, attorney's fees, costs, and judicial interest.

## DEMAND FOR JURY

41. Plaintiff hereby demands a trial by jury for all issues in this case.

## PRAYER FOR RELIEF

WHEREFORE, having set forth his Complaint, Plaintiff respectfully requests that this Court:

(a) Enter a declaratory judgment that the practices complained of herein are unlawful under the FLSA and that Defendant willfully violated Plaintiff's rights under the FLSA;

(b) Award Plaintiff his unpaid back wages and liquidated damages in an amount equal to the unpaid compensation found due to Plaintiff under the FLSA;

(c) Award Plaintiff attorneys' fees, pre-judgment and post-judgment interest, and costs (including expert witness expenses), all as provided by the FLSA;

(d) Award Plaintiff the unpaid wages and payments due as a result of Defendant's breach of contract;

(e) Award Plaintiff unpaid wages, penalty wages, attorney's fees, costs, and judicial interest as provided by the Wage Payment Act; and

(f) Award Plaintiff any other legal and equitable relief that this Court deems just and proper.

Dated: November 17, 2015                    Respectfully Submitted:

**WILLIAMS LITIGATION, L.L.C.**

By:  s/Christopher L. Williams
Christopher L. Williams
La. Bar Roll No. 32269
639 Loyola Ave., Suite 1850
New Orleans, LA 70113
Telephone: 504.308.1438
Fax: 504.308.1446
chris@williamslitigation.com

*Attorney for Plaintiff*